UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————

ADRIENNE SAYERS,

        Plaintiff,

   v.                                       20-CV-703-LJV-JJM
                                               DECISION & ORDER

NIAGARA FALLS CITY SCHOOL
DISTRICT,

        Defendant.

—————————————————————

On June 11, 2020, the plaintiff, Adrienne Sayers, commenced this action,

alleging that the defendant, Niagara Falls City School District (the "District"),

discriminated against her on the basis of sex, age, and disability.  Docket Item 1.

Sayers raises claims under Title VII of the Civil Rights Act of 1964 ("Title VII"); the Age

Discrimination in Employment Act of 1967 ("ADEA"); the Americans with Disabilities Act

of 1990 ("ADA"); and the New York State Human Rights Law ("NYSHRL").  *Id.*  She also

seeks relief under 42 U.S.C. § 1983, alleging that the District deprived her of due

process and violated her right to freedom of association.  *Id.*  On September 11, 2020,

the District moved to dismiss the complaint under Federal Rule of Civil Procedure

12(b)(6), Docket Item 11; on December 14, 2020, Sayers responded, Docket Item 19;

and on January 4, 2021, the District replied, Docket Item 22.

A week later, the case was referred to United States Magistrate Judge Jeremiah

J. McCarthy for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket

Item 23.  On August 30, 2021, Judge McCarthy issued a Report and Recommendation

("R&R") finding that the District's motion should be granted but that Sayers should be

given leave to replead.  Docket Item 24.  On September 13, 2021, Sayers objected to

the R&R on the grounds that Judge McCarthy improperly held her to a heightened

pleading standard and that, in any event, she met that heightened standard.  Docket

Item 25.  On September 29, 2021, the District responded to the objection.  Docket

Item 27.  And on October 18, 2021, Sayers replied.  Docket Item 28.

A district court may accept, reject, or modify the findings or recommendations of

a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must

review *de novo* those portions of a magistrate judge's recommendation to which a party

objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this

case; the objection, response, and reply; and the materials submitted to Judge

McCarthy.  Based on that *de novo* review, the Court accepts Judge McCarthy's

recommendation to grant the District's motion but to give Sayers leave to replead.

### FACTUAL BACKGROUND[1]

Sayers was a tenured teacher employed by the District for more than twenty

years.  Docket Item 1 at ¶¶ 9-10.  She is a female older than forty, and she has

post-traumatic stress disorder ("PTSD").  *Id.* at ¶¶ 11-13.

The District terminated Sayers's employment because of her gender, age, and

disability.  *See id.* at ¶¶ 25-48.  But the District also had a residency policy[2] for its

---

[1] On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

[2] On a motion to dismiss, the Court also may consider any "documents [] in [the] plaintiff['s] possession or of which [the] plaintiff[] had knowledge and relied on in

employees, and the District claims that it terminated Sayers for not complying with that policy.  *See id.* at ¶ 20; *see also* Docket Item 11-3. The residency policy requires employees to "become [] resident[s] of the City of Niagara Falls" and to "maintain residency" throughout employment.  Docket Item 11-3 at 3.  Under the policy, residency means "an individual's actual principal domicile at which he or she maintains usual personal and household effects."  *Id.*

The District "threatened to terminate [] Sayers if she resided outside the [D]istrict."  Docket Item 1 at ¶ 18.  Sayers "maintained a residence within the City of Niagara Falls," *id.* at ¶ 14, but the District nevertheless "hired private investigators to follow [her]," *id.* at ¶ 15.  Dissatisfied with Sayers's compliance with the residency policy, *see id.* at ¶¶ 18-20, the District terminated Sayers "without a hearing," *id.* at ¶ 22.[3]

---

bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).  Sayers is challenging the residency policy, *see, e.g.*, Docket Item at ¶¶ 20-21, and does not dispute the contents of the District's residency policy in her papers opposing the motion to dismiss.  This policy also was discussed by the New York Court of Appeals in *Beck-Nichols v. Bianco*, 20 N.Y.3d 540, 557-58, 987 N.E.2d 233, 241 (2013), and Judge McCarthy found that the Court could take judicial notice of the policy and consider it on the motion to dismiss.  Docket Item 24 at 3-4; *see Bellin v. Zucker*, 6 F.4th 463, 471 n.10 (2d Cir. 2021) ("The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," and is "entitled to consider matters of which judicial notice may be taken under Federal Rule of Evidence 201 in deciding a Rule 12(b)(6) motion to dismiss." (alterations and internal quotations marks omitted)).  Sayers did not object to that, and so this Court considers the policy as well.

[3] Sayers does not explicitly allege that the District terminated her due to non-compliance with the policy, but reading the sparse allegations in the complaint liberally, that appears to be what she is saying.  If that is incorrect, Sayers may so indicate in any amended complaint.

**PROCEDURAL HISTORY**

On September 11, 2020, the District moved to dismiss the complaint, arguing

that Sayers failed "to meet even a *de minimus* [sic] pleading standard" and pleaded only

"threadbare recitations of the law, and vague, conclusory, and irrelevant assertions."

Docket Item 11-26 at 7 (emphasis in original).  More specifically, the District argued that

Sayers's discrimination claims[4] failed because she did not plead that she met the

residency policy at the time of her termination and, therefore, that she was qualified for

employment.  *Id.* at 11-21.  The District also argued that Sayers's discrimination claims

failed because she did not plead facts giving rise to an inference of discriminatory intent.

*Id.*  With respect to Sayers's due process claim, the District argued that Sayers received

all the process that she was due.  *Id.* at 21-28.  And the District argued that Sayers's

freedom of association claim failed because she did not allege that the residency policy

"directly and substantially interfered with [her] right to participate in [a] protected

relationship."  *Id.* at 29-30.

Sayers responded that she adequately alleged facts that support an inference of

discriminatory intent based on gender, age, and disability.  Docket Item 19.  She argued

that each of her claims raised a question of fact and that the District's arguments about

non-compliance with the residency policy were premature.  *Id.*

Judge McCarthy found that all Sayers's claims hinged on whether the complaint

pleaded facts sufficient to show that Sayers was qualified for continued employment.

---

[4] The District also argued that Sayers's state law discrimination claims must be
dismissed because Sayers did not timely serve a notice of claim on the District.  *Id.* at
10-11.

Docket Item 24 at 2.  He found that if Sayers could not plausibly allege that she was qualified, then she was not entitled to relief on her discrimination claims.  *Id.* at 3. Similarly, he found that if Sayers were not qualified, then she had no property interest in her continued employment, and her due process and freedom of association claims failed as well.  *Id.* at 5-6.

Judge McCarthy also found that to plausibly allege that she was qualified, Sayers needed to "allege facts supporting a reasonable inference that she satisfied the District's residency policy."  *Id.* at 3.  Judge McCarthy concluded that Sayers did not plausibly allege that she complied with the residency policy and therefore was qualified. *Id.* at 3-5.  Accordingly, he recommended that the Court dismiss her federal claims and decline to exercise jurisdiction over her state law claims.  *Id.* at 6-7.  He also found that other pleading deficiencies, in particular, the failure to allege that discrimination based on her gender, age, or disability caused her termination, required the Court to dismiss Sayers's discrimination claims.  *Id.* at 4-5.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

**DISCUSSION**

I.    **DISCRIMINATION CLAIMS**

Sayers argues that Judge McCarthy incorrectly held her to a heightened pleading standard and required her to plead specific facts—in particular, that she satisfied the residency policy.  Docket Item 25 at 4-6.  She also asserts that she has no duty to demonstrate a prima facie case of discrimination at the pleading stage.  *Id.*  Sayers's statement of the law is correct: she is not required to show a prima facie case of discrimination as contemplated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), at the pleading stage.  But her complaint still is insufficient to state a claim for discrimination under Title VII, the ADEA, and the ADA.

A.    **Title VII and ADEA Claims**

Because Sayers pleads employment discrimination, her case invokes the burden-shifting framework first articulated in *McDonnell Douglas*.[5]  Under the *McDonnell Douglas* framework, a plaintiff first must establish a *prima facie* case of unlawful discrimination.  *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015).  To state such a *prima facie* case, the plaintiff must show "(1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and [(4) that she has] some minimal evidence suggesting an inference that the employer acted with discriminatory motivation."  *Id.*  If

---

[5] Claims brought under Title VII, the ADA, and the ADEA all are evaluated under the *McDonnell Douglas* framework.  *See McDonnell Douglas*, 411 U.S. at 802-04 (Title VII)*; Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167-68 (2d Cir. 2014) (ADEA); *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999) (ADA).

the plaintiff meets that burden, the defendant is presumed to have unlawfully discriminated against her; the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  If the defendant makes that showing, the burden shifts back to the plaintiff to show that the defendant's stated reason is pretextual.  *Id.* at 307-08.

What that means in the pleading context has changed over the years.  In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Supreme Court held that the *McDonnell Douglas* line of cases established "an evidentiary standard, not a pleading requirement," and that a plaintiff alleging discrimination need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Id.* at 510, 512.  "Reading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent."  *Littlejohn*, 795 F.3d at 309.

"But only seven years later, the Supreme Court cast doubt on *Swierkiewicz*'s vitality."  *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020).  In "*Iqbal*, it held that mere notice pleading—the pleading standard underlying *Swierkiewicz*'s analysis— was inadequate, and that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Although the Supreme Court has not clarified how this plausibility standard affects the *McDonnell Douglas* framework, the Second Circuit has interpreted *Iqbal* as requiring an employment-discrimination plaintiff to plead "enough nonconclusory factual matter to nudge her claim[s] across the line from conceivable to plausible."  *Id.* (alterations omitted)

7

So to defeat a motion to dismiss, an employment-discrimination plaintiff alleging gender discrimination under Title VII or age discrimination under the ADEA "need only give plausible support to a minimal inference of discriminatory motivation" behind an adverse employment action.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015); *Littlejohn*, 795 F.3d at 306, 311.  In a Title VII sex discrimination case, a plaintiff must plausibly allege that her sex was a motivating factor for the adverse action.  *Vega*, 801 F.3d at 85.  In an ADEA claim, a plaintiff must meet a slightly-different standard: that is, she "must plausibly allege that . . . her age was the 'but-for' cause of the adverse action."  *Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 31-32 (2d Cir. 2016) (summary order).

Therefore, even though Sayers is correct that she need not plead a prima facie case of discrimination as contemplated by *McDonnell Douglas*, she still must give "plausible support to a minimal inference of discriminatory motive."  *See Vega*, 801 F.3d at 84.  Such "[a]n inference of discrimination can arise from circumstances including, but not limited to, [1] 'the employer's criticism of the plaintiff's performance in . . . terms [that are degrading to her protected class]; [2] its invidious comments about others in the employee's protected group; [3] the more favorable treatment of employees not in the protected group; [4] the sequence of events leading to the plaintiff's discharge'[; or 5] . . . when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class."  *Littlejohn*, 795 F.3d at 312-13.  But Sayers has alleged none of that—or even anything remotely suggesting discrimination—and she therefore has failed to plausibly allege facts supporting even a minimal inference that the District discriminated against her.

8

For example, Sayers does not allege that younger or male teachers were exempt from the residency policy.  She does not allege that "invidious comments" were made about her age or gender.  She does not allege that she was replaced by a younger teacher or a male.  She does not allege anything that might possibly support even a minimal inference of discrimination on the basis of gender or age.  Instead, she simply alleges that she was a member of a protected class and that she suffered an adverse employment action.  Docket Item 1 at ¶¶ 26, 30, 34, 38.  And as Judge McCarthy found, *see* Docket Item 24 at 4-5, that is not enough.

In fact, the complaint suggests that Sayers's failure to live in the City of Niagara Falls actually triggered her termination.  She says that the District "threatened to terminate [her] if she resided outside the [D]istrict."  Docket Item 1 at ¶ 18.  And she takes issue with the District's "assert[ion] that it has a policy that entitle[d] [it] to [terminate a tenured teacher.]"  *Id.* at ¶ 20.  In other words, her complaint seems more about the unfair application of the residency policy than about any claim of discrimination.[6]

In any event, Sayers has not plausibly alleged that her age or gender had anything to do with her termination.  Therefore, this Court agrees with Judge McCarthy

---

[6] In her objection and reply, as in her submissions to Judge McCarthy, Sayers seems to say that the District's residency policy was applied to her in a discriminatory fashion.  *See* Docket Item 19 at 2-3; Docket Item 25; Docket Item 28.  But if that is her claim, the complaint not only fails to provide any reason why it might be plausible but fails to mention it at all.  *See* Docket Item 1.  Simply saying that the plaintiff is a member of a protected class; that her employer had a residency policy; that she lost her job; and that the defendant discriminated against her is insufficient.  But that is essentially what the plaintiff has pleaded here.

that she has failed to state a claim for age or gender discrimination sufficient to withstand a motion to dismiss.

### B.    ADA Claim

"The elements of a [discrimination] claim under the ADA are that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). As noted above, "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas* . . . to defeat a motion to dismiss" but "need only give plausible support to a minimal inference of discriminatory motivation at the pleading stage." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Vega*, 801 F.3d at 84).

The ADA defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of [an] individual; . . . a record of such an impairment; or . . . being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[A] plaintiff [must] do more than simply allude to her impairments in her pleading; she must plead *how* those impairments significantly impacted her major life activities, or she will not survive a motion to dismiss." *Collins v. Giving Back Fund*, 2019 WL 3564578, at *13 (S.D.N.Y. Aug. 6, 2019) (emphasis in original); *see also Giallanza v. Time Warner Cable*, 2009 WL 857502, at *7 (W.D.N.Y. Mar. 30, 2009) ("[I]t is well

settled under federal law that the ADA requires more than a diagnosis of a condition for a person to be considered disabled as that term is defined under the Act.").

Here, Sayers has pleaded only that she "has a disability": that she "has PTSD." Docket Item 1 at ¶ 42. She does not say—or include any facts from which the Court can infer—that her PTSD substantially limited her ability to perform any major life activities. Sayers therefore has not pleaded that she has a disability within the meaning of the ADA.[7] *See Giallanza*, 2009 WL 857502, at *7; *Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 151 (E.D.N.Y. 2015) ("Without any factual specificity as to the alleged disability claimed and the major life activities affected, the [c]omplaint fails to plead that plaintiff was disabled.").

In sum, Sayers has failed to plead that she has a disability within the meaning of the ADA and that she suffered an adverse action because of that disability. Therefore, this Court agrees with Judge McCarthy that she has not stated a claim for discrimination based on disability.

---

[7] Sayers also has not pleaded "a record" of PTSD as a disabling impairment. To show a record of impairment, a plaintiff must establish that she "has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment." 29 C.F.R. § 1630.2(k)(2). Sayers's "failure to plausibly allege a substantial limitation to a major life activity . . . precludes her from asserting that she has a record of disability." *See Kelly v. N.Y. State Off. of Mental Health*, 200 F. Supp. 3d 378, 394 (E.D.N.Y. Aug. 9, 2016). Nor has she alleged that the District regarded her as having a disability. To adequately plead that she was "regarded as having" a disability, 42 U.S.C. § 12102(1), a plaintiff "must allege that [s]he has been subjected to an action prohibited by the ADA . . . because of an actual or perceived impairment that is not both transitory and minor." *See Rodriguez v. Verizon Telecom*, 2014 WL 6807834, at *5 (S.D.N.Y. Dec. 3, 2014) (internal quotation marks omitted). Sayers does not say that here.

## II.    DUE PROCESS CLAIM

Judge McCarthy recommended dismissing Sayers's due process claim because she failed to plausibly allege a property interest in continued employment.  Docket Item 24 at 5.  He found that "the dimensions of [Sayers's] entitlement to continued employment are defined by the District's residency policy"; that Sayers did not "plausibly allege[] that she satisfie[d] that policy"; and that she therefore failed to allege any protected property interest.  *Id.*

Sayers argues that Judge McCarthy held her to too high a pleading standard in finding that she had not adequately alleged a property interest in continued employment.  Docket Item 25 at 6-7.  She asserts that her tenure as a teacher is sufficient to allege a property interest that is subject to due process protections and that her property interest was abridged when she was terminated without due process.  And she argues that Judge McCarthy "ignore[d] well[ ]settled jurisprudence that tenure creates a property interest."  *Id.*

Sayers is correct that it is "well[ ]established that a tenured public employment position is a property interest subject to due process protections."[8]  *Burdick v. Bath*

---

[8] Sayers suggests that the source of this property interest is the Constitution. *See* Docket Item 25 at 6 & n.5.  This point merits some clarification.  As Judge McCarthy correctly explained, "[p]roperty interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source."  Docket Item 24 at 5 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)).  Once a property interest is created, however, it cannot be deprived absent constitutionally adequate procedures. *Loudermill*, 470 U.S. at 541.  That is because "[t]he right to due process 'is conferred not by legislative grace, but by constitutional guarantee.'"  *Id.*  So although "the legislature may elect not to confer a property interest in public employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards."  *Id.* (alterations omitted).

*Cent. Sch. Dist.*, 2020 WL 1435112, at *4 (W.D.N.Y. Mar. 24, 2020) (citing *Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist.*, 902 F.2d 208, 211 (2d Cir. 1990)).  Sayers has alleged that she was a tenured teacher, Docket Item 1 at ¶ 52, and this Court therefore respectfully disagrees with Judge McCarthy and finds that Sayers has alleged a property interest.  Accordingly, she was entitled to due process protections.

But even when due process applies, "the question remains what process is due." *Loudermill*, 470 U.S. at 541.  A tenured employee generally is entitled to "some kind of a hearing" prior to discharge,[9] *id.* at 542-43, but it "need not be elaborate," *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 467 (2d Cir. 2006).  In fact, the Second Circuit has described the pre-termination hearing requirement as "a minimal one."  *Locurto v. Safir*, 264 F.3d 154, 173 (2d Cir. 2001).  "An employee who has a property interest in his employment 'is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story,' before he is subjected to the loss of employment."  *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 212 (2d Cir. 2002) (quoting *Loudermill*, 470 U.S. at 546).

Sayers does not allege that the District failed to provide adequate notice of her termination.  On the contrary, she alleges that the District "threatened to terminate [her] if she resided outside the [D]istrict," Docket Item 1 at ¶ 18, and that the District asserted

---

[9] Although a tenured employee generally is entitled to a pre-termination hearing, that is not always the case.  For example, "where a governmental body implements a 'substantial reduction in its work force' for efficiency reasons, no pre-termination hearings are required."  *Knox v. Town of Se.*, 599 F. App'x 411, 413 (2d Cir. 2015) (summary order).  This Court need not determine whether a pre-termination hearing is required when the employee is accused of not complying with a residency requirement because even if a pre-termination hearing is required, Sayers has not adequately alleged that the District deprived her of such a hearing.

that the residency policy "entitle[d] [it] to take this . . . action," *id.* at ¶ 20, suggesting she had notice even before her termination.  But Sayers does allege that the District terminated her "without a hearing."  *Id.* at ¶ 56.

That due process claim is inadequate for several reasons.  First, Sayers pleads only conclusions and simply recites the elements of a due process claim.  *See id.* at ¶¶ 53-59.  Although a court is required to accept "all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff," *Trs. of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 566, it is "not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (citation omitted).  Nor will "a formulaic recitation of the elements of a cause of action" suffice.  *Id.*

Moreover, Sayers has not alleged that the procedures available to her failed to provide her with adequate process.  She says that she did not receive a hearing, but the District gives its employees both pre- and post-termination opportunities to rebut allegations of non-compliance with the residency policy.  Before terminating employment for violating the residency policy, the District first issues a "seven-day letter," notifying the employee of the alleged non-compliance.  *Beck-Nichols*, 20 N.Y.3d at 558, 987 N.E.2d at 241-42; Docket Item 11-3 at 4.  Then, the District provides the employee with the opportunity to respond in writing to the allegations of non-compliance.  *Beck-Nichols*, 20 N.Y.3d at 558, 987 N.E.2d at 241–42; Docket Item 11-3 at 4.  If the District continues to "believe the employee is in violation of the residency policy," then the District institutes the necessary proceedings to terminate employment.  Docket Item 11-3 at 4.

Sayers does not allege that the District failed to follow its procedures for dealing with residency policy violations nor that such procedures failed to provide adequate process.  In other words, she does not allege that she had no "opportunity to present [her] side of the story," *see Munafo*, 285 F.3d at 212.  Although Sayers alleges that she did not receive "a hearing," *see, e.g.*, Docket Item 1 at ¶ 56, that single, vague, conclusory statement is insufficient to nudge Sayers's due process claim from "conceivable to plausible," *see Iqbal*, 562 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570), and give rise to the inference that she was deprived an opportunity to be heard.

Indeed, Sayers does not provide any factual allegations from which this Court can infer what type of "hearing" Sayers believes she was entitled to but denied. Perhaps Sayers means that she was denied the procedures outlined in the residency policy.  Perhaps she means that she was entitled a formal hearing rather than simply "some kind of a hearing."  Or perhaps she is referring to pre-termination hearings required by New York Education Law §§ 2509(2), 3020, and 3020-a, which relate to teacher discipline.[10]  Regardless, other than by stating the conclusion that she was

---

[10] From her complaint, it is not clear what type of hearing Sayers is alleging she did not receive; her response to the motion to dismiss suggests that Sayers is referring to a formal, pre-termination hearing permitting her to appear with counsel before the Board of Education, *see* Docket Item 19 at 18.  But the complaint is devoid of allegations that plausibly suggest due process required such a formal hearing.  It also does not appear that Sayers was entitled to a formal, pre-termination hearing under state law.  The New York Court of Appeals has held that a tenured teacher terminated for non-compliance with the District's residency policy is not entitled to a pre-termination hearing under New York Education Law §§ 2509(2), 3020, and 3020-a.  *Beck-Nichols*, 20 N.Y.3d at 558-59, 987 N.E.2d at 242.  The Court of Appeals found that because the residency policy defined eligibility for employment, it was unrelated to the grounds that would trigger a hearing under these provisions—that is, "job performance, misconduct[,] or competency."  *Id.*  Instead, general considerations of due process applied, and rather than a formal, pre-termination hearing, "only notice and some opportunity to respond" were required.  *Id.*

denied "a hearing," Sayers does not allege that she was denied the opportunity to be heard or the "minimal" hearing owed to her pre-termination.

Sayers also had post-termination due process protections: she could have challenged her termination through a proceeding under New York Civil Practice Law and Rules Article 78.  *See* New York CPLR § 7804.   "[I]t is well[ ]established that an Article 78 proceeding affords a tenured employee adequate due process post-termination."  *Burdick*, 2020 WL 1435112, at *7; *see, e.g.*, *Locurto*, 264 F.3d at 175 ("An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes.").  Sayers does not allege that she brought an Article 78 proceeding, nor does she suggest any reason why an Article 78 proceeding was or would have been inadequate.  "Where, as here, the plaintiff had available adequate process, [she] cannot be said to have been 'deprived of due process simply because [she] failed to avail [herself] of the opportunity.'"  *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, 955 F. Supp. 2d 118, 129 (E.D.N.Y. 2013).

Accordingly, even though this Court agrees with Sayers that she has pleaded a property interest, it finds that Sayers has not pleaded that she was deprived of any process that she was due.  Based on this modified reasoning, this Court agrees with Judge McCarthy that Sayers has failed to state a due process claim.

## III.    FREEDOM OF ASSOCIATION CLAIM

As she does with respect to her other claims, Sayers argues that Judge McCarthy incorrectly held her to a heightened pleading standard in connection with her freedom of association claim.  Docket Item 25 at 7.  But she also argues that Judge McCarthy simply misunderstood that claim.  *Id.*  Judge McCarthy found that Sayers

needed to plead a property interest in her continued employment to state a freedom of association claim and that she had failed to do so.  Docket Item 24 at 6.  In her objections, Sayers clarifies that she is claiming that the residency policy as applied to her infringed upon her right to freedom of association.  Docket Item 25 at 7.  In other words, she argues that the District's policy deprives her of a fundamental right—that is, freedom of association.  *Id.*

Confusion about Sayers's freedom of association claim is understandable, as the nature and extent of this right is hardly clear.  "The Supreme Court has recognized a right of association with two distinct components—an individual's right to associate with others in intimate relationships and a right to associate with others for purposes of engaging in activities traditionally protected by the First Amendment, such as speech and other expressive conduct."  *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999) (citing *Roberts v. U.S. Jaycess*, 468 U.S. 609, 617-18 (1984)).  In this case, it is the first of these rights—the right to intimate association, as opposed to expressive association— that is implicated.

"The source of the intimate association right has not been authoritatively determined."  *Id.*  Depending on the context, it may be grounded in the First or the Fourteenth Amendment.  *Id.* at 42-43.  In *Adler*, the Second Circuit observed that the constitutional grounding of such a claim typically turned on whether the plaintiff was challenging a broad regulation or a specific adverse action.  *Id.* at 43.  "Challenges to broad regulatory measures" tend to be considered under the due process clause, while "claims that some adverse state action burdens an individual's . . . relationship have been assessed under [the] First Amendment."  *Id.*

And "[j]ust as the source of a right of intimate association has varied, so has the standard applied in determining whether that right has been violated." *Id*. Some opinions suggest that the "right is not violated unless the challenged action has the likely effect of ending the protected relationship," *id*. (citing *Lyng v. Int'l Union, UAW*, 485 U.S. 360, 364-66 (1988)), or "unless affecting the relationship was the purpose of the challenged regulation," *id*. (citing *Califano v. Jobst*, 434 U.S. 47, 54 (1977)). Although these cases suggest that some intent to interfere with the intimate association is required, the Second Circuit has not definitively ruled on whether intent to interfere is a necessary element of a freedom of intimate association claim. *Sharpe v. City of New York*, 560 F. App'x 78, 79 (2d Cir. 2014) (summary order). Other cases consider whether the allegedly burdensome action "is arbitrary or an undue intrusion by the state into the marriage relationship." *Adler*, 185 F.3d at 43-44 (internal quotation marks omitted) (citing *Adkins v. Bd. of Educ.*, 982 F.2d 952, 956 (6th Cir. 1993)).

This Court need not determine the precise standard applicable to Sayers's claim because regardless of the standard applied, Sayers has failed to state a viable claim that the residency policy infringes her right to freedom of association.[11]

---

[11] In her objections, Sayers also suggests that because freedom of association is a fundamental right, it is subject to strict scrutiny and the District must have a compelling government interest for the residency policy. Docket Item 25 at 7. Sayers over-simplifies the analysis. The Supreme Court has held that not every statute "which relates in any way to the incidents of or prerequisites" of a protected intimate association is subject to strict scrutiny. *Zablocki v. Redhail*, 434 U.S. 374, 386 (1978). "[R]easonable regulations that do not significantly interfere with decisions to enter into the [protected] relationship may legitimately be imposed." *Id*. Accordingly, for strict scrutiny to apply, the regulation must "interfere directly and substantially" with the protected relationship. *Id*. at 387. As pleaded, Sayers has not alleged how the residency policy "interfere[d] directly and substantially" with a protected relationship, *see id*., and strict scrutiny therefore would not be triggered. And what level of scrutiny would

Sayers has not included any allegations from which the Court can infer that the residency policy or its application "ha[d] the likely effect of ending [any] protected relationship." *Adler*, 185 F.3d at 43. Sayers alleges that she has a right to have "romantic relationships with whomever she chooses," Docket Item 1 at ¶ 64, but she does not include any non-conclusory allegations about how the residency policy affected her relationship—let alone how it would likely end that relationship. For example, she does not allege that the residency policy might force her to end a relationship, create a legal obstacle to entering an intimate relationship, or make a relationship practically impossible to maintain. *Cf. Parks v. City of Warner Robins*, 43 F.3d 609, 614 (11th Cir. 1995) (finding municipal employer's anti-nepotism policy did not create a "direct legal obstacle" or make marriage "practically impossible"). Indeed, Sayers does not even allege anything about the relationship supposedly affected by the policy.

Sayers similarly has not alleged any facts from which the Court can infer that the District adopted or applied the residency policy for the purpose of interfering in her relationship. *See Adler*, 185 F.3d at 43. Her conclusory allegation that the District "objected to [her] right to choose who she has a relationship with," *id.* at ¶ 65, does not help. At best, it suggests that the District may have been displeased with a relationship that she was in, but it does not allege or raise the inference that the District intentionally interfered with that relationship.

---

apply to her claims largely is beside the point as Sayers has not plausibly alleged a deprivation of any sort.

Finally, Sayers also does not allege that the residency policy is an "arbitrary" or "undue" intrusion into a protected relationship.  *See Adler*, 185 F.3d at 43-44.  Just as she has not alleged that the policy was likely to end a protected relationship, Sayers has not alleged any intrusion on a relationship—or with her ability to select and pursue intimate relationships, for that matter.  Perhaps Sayers is trying to say that the person with whom she has a relationship lives outside the District and that the policy interferes with her staying at her partner's house.  But even that does not connect the policy to a violation of her right to intimate association because it does not explain why—indeed, it does not even assert that—Sayers's staying at her partner's house is crucial to that relationship.

In sum, based on modified reasoning, this Court agrees with Judge McCarthy that Sayers has not alleged a viable freedom of intimate association claim.

## IV.    NYSHRL CLAIMS

Sayers's remaining claims all arise under New York law.  A "district court[] may decline to exercise supplemental jurisdiction over a [state law] claim" if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity[]' in deciding whether to exercise jurisdiction."  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 450 (1988)).  And "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Id.* (alterations omitted) (quoting *Cohill*, 484 U.S. at 350 n.7).

Judge McCarthy recommended that the Court decline to exercise supplemental jurisdiction over such claims.  Docket Item 24 at 6.  This Court agrees.  If Sayers does not amend her complaint to correct the deficiencies outlined above, this Court will decline to exercise supplemental jurisdiction over Sayers's remaining state law claims.

## V.   LEAVE TO AMEND

Sayers did not ask for leave to amend, but Judge McCarthy nevertheless recommended that she be given leave to replead her complaint.  Because leave to amend should be "freely given" whenever a complaint is dismissed, *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), this Court again agrees with Judge McCarthy.  Within 60 days, Sayers may file an amended complaint that corrects the deficiencies noted above.

## <u>CONCLUSION</u>

For the reasons stated above, this Court accepts Judge McCarthy's recommendation.  The District's motion to dismiss, Docket Item 11, will be granted unless, **within 60 days of the date of this order**, Sayers amends her complaint to correct the deficiencies addressed above.  No later than 30 days after any amended complaint is filed, the District may answer, move against, or otherwise respond to the amended complaint.  If Sayers does not amend her complaint within 60 days, then her complaint will be dismissed, and the Clerk of the Court shall close the case without further order.

SO ORDERED.


Dated:          March 8, 2022
                Buffalo, New York


                                        /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE