UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ADRIENNE SAYERS,

                            Plaintiff,

v.

NIAGARA FALLS CITY SCHOOL
DISTRICT,

                            Defendant.
_____

**REPORT AND RECOMMENDATION**

Case No. 1-20-cv-00703-LJV-JJM

        This action arises from plaintiff Adrienne Sayers' termination from her tenured teaching position by the Niagara Falls City School District for violating its residency policy. Defendant Niagara Falls City School District's initial motion to dismiss the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) [11] [1] was granted, without prejudice to Sayers's right to file an Amended Complaint. *See* <u>Sayers v. Niagara Falls City School District</u>, 2021 WL 8155953 (W.D.N.Y. 2021), <u>adopted</u>, 2022 WL 682640 (W.D.N.Y. 2022).

        Currently before the court is the District's motion [38] to dismiss the Amended Complaint [30] which has been referred to me by District Judge Lawrence J. Vilardo for initial consideration [23]. Having reviewed the parties' submissions [38, 40, 41], I recommend that the motion be granted.

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

## BACKGROUND

The parties' familiarity with the background of this case is presumed. In her Amended Complaint, Sayers alleges that she was not in violation of the District's residency policy because "[a]t all relevant times, [her] primary domicile was located [in] . . . Niagara Falls, NY"). [30], ¶16. Sayers continues to assert the same five causes of action as in her original Complaint: first, for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §296 (Amended Complaint [30], ¶¶34-44); second, for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et seq.*, and the NYSHRL (id., ¶¶45-56); third, for disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12111 *et seq.*, and the NYSHRL (id., ¶¶57-67); fourth, for relief under 42 U.S.C. §1983 for deprivation of due process (id., ¶¶68-80); and fifth, for relief under 42 U.S.C. §1983 for violation of her right to freedom of association (id., ¶¶81-93).

## DISCUSSION

**A.     Discrimination Claims**

As Judge Vilardo recognized, Sayers "need not plead a *prima facie* case of discrimination as contemplated by McDonnell Douglas, [but] she still must give 'plausible support to a minimal inference of discriminatory motive.'" Sayers, 2022 WL 68264 at *4 (*quoting* Vega v. Hempstead Union Free School District, 801 F.3d 72, 84 (2d Cir. 2015)). "Such '[a]n inference of discrimination can arise from circumstances including, but not limited to, [1] 'the employer's criticism of the plaintiff's performance in . . . terms [that are degrading to her

protected class]; [2] its invidious comments about others in the employee's protected group; [3] the more favorable treatment of employees not in the protected group; [4] the sequence of events leading to the plaintiff's discharge'[; or 5] . . . when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class.'" Id. (*quoting* Littlejohn v. City of New York, 795 F.3d 297, 312-13 (2d Cir. 2015)).

### 1. Title VII and ADEA Claims

In dismissing these claims from the Complaint, Judge Vilardo found that Sayers had not "alleged . . . anything remotely suggesting discrimination - and she therefore has failed to plausibly allege facts supporting even a minimal inference that the District discriminated against her. For example, Sayers does not allege that younger or male teachers were exempt from the residency policy." Sayers, 2022 WL 682640 at *4. The Amended Complaint seeks to remedy this deficiency by pointing to five allegedly "similarly situated comparators", who "upon information and belief . . . did not have their primary domicile in Niagara Falls", but "were not subjected to an investigation by the District". Amended Complaint [30], ¶¶44, 56. These alleged comparators include two males in their 50s (Mark Laurrie, the District's Superintendent, and James Spanbauer, a "School Administrator") and three females in their 40s to 50s (Chithra Kandaswami, a "School Psychologist", Mia Bianco, and Valerie Militello Faso). Id.

"To support a minimal inference of discrimination, a plaintiff may allege disparate treatment by showing the more favorable treatment of employees *not in the protected group*, who are similarly situated in all material respects." Carris v. First Student, Inc., 682 F. App'x 30, 32 (2d Cir. 2017) (Summary Order) (emphasis added). As the District recognizes, this "is not an onerous" standard. District's Memorandum of Law [38-7] at 7. "[T]he judgment rests

on whether the plaintiff and those she maintains were similarly situated were subject to the same workplace standards . . . . The plaintiff's and comparator's circumstances must bear a 'reasonably close resemblance' but need not be 'identical." Brown v. Daikin America Inc., 756 F.3d 219, 230 (2d Cir. 2014).

"Ordinarily, whether two employees are similarly situated presents a question of fact, rather than a legal question to be resolved on a motion to dismiss." Id.  See also Hu v. City of New York, 927 F.3d 81, 97 (2d Cir. 2019) ("it is precisely in light of the inquiry's fact-intensive nature that we have cautioned against deciding whether two comparators are similarly situated on a motion to dismiss").  "On a motion to dismiss, a court must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." Doe v. Columbia University, 2022 WL 4537851, *28 (S.D.N.Y. 2022).

Notwithstanding this relatively low standard, the Amended Complaint falls short of plausibly identifying proper comparators, much less comparators who were similarly situated. Rather than pointing to individuals *outside* of her protected categories (*i.e.*, gender and age), Sayers primarily points to individuals *within* her protected categories.  Like her, all of the alleged comparators are more than 40 years of age, and three are also women.  Although she identifies two comparators of the opposite gender, the facts alleged fail to plausibly establish that they are similarly situated.  In particular, neither Laurrie nor Spanbauer are alleged to be teachers, and there is no allegation that the District's Superintendent and administrators were subject to the same residency requirement as Sayers. See Sayers, 2022 WL 682640 at *4 ("Sayers does not allege that younger or male *teachers* were exempt from the residency policy" (emphasis added)). Moreover, Sayers' allegations are made entirely upon information and belief, without any

identification of her basis of knowledge. See Whiteside v. Hover-Davis, Inc., 2020 WL 979785, *4 (W.D.N.Y. 2020), aff'd, 995 F.3d 315 (2d Cir. 2021) ("[a] plaintiff cannot avoid the necessity of pleading a plausible claim supported by factual allegations merely by asserting statements 'upon information and belief' without explaining the basis for the belief"). Therefore, I recommend that these claims be dismissed.

    2.    **ADA Claim**

"The elements of a claim under the ADA are that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." Davis v. New York City Department of Education, 804 F.3d 231, 235 (2d Cir. 2015). As with Sayers' other discrimination claims, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation at the pleading stage". Dooley v. JetBlue Airways Corp., 636 F. App'x 16, 21 (2d Cir. 2015) (Summary Order).

The ADA defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of [an] individual; . . . a record of such an impairment; or . . . being regarded as having such an impairment." 42 U.S.C. §12102(1). "A plaintiff must do more than simply allude to her impairments in her pleading; she must plead how those impairments significantly impacted her major life activities, or she will not survive a motion to dismiss." Sayers, 2022 WL 682640 at *5. In dismissing Sayers's ADA claim from the Complaint, Judge Vilardo explained that "Sayers has pleaded only that she 'has a disability':

that she 'has PTSD.' [Post Traumatic Stress Disorder] . . . She does not say - or include any facts from which the Court can infer - that her PTSD substantially limited her ability to perform any major life activities." Id. Additionally, he concluded that Sayers failed to plead that she "suffered an adverse action because of that disability". Id. at *6.

In her Amended Complaint [30], Sayers now alleges that she not only suffers from PTSD, but anxiety and depression as well, and that the District became aware of this when they approved a 2017 medical leave. Id., ¶¶13-14. She also alleges that the hiring of investigators by the District "aggravated [her] disabilities, resulting in [her] becoming physically ill" (id., ¶¶59-60; 47-48), and that the District declined her alternative proposal of conducting a site check without engaging "in any interactive process in consideration of [her] known disabilities". Id., ¶63. "Due to [her] exacerbated PTSD, she had a substantial change in her life activities. [Sayers] began using a substantial amount of sick time to avoid driving. The exacerbated PTSD, along with being tailed by an investigator, caused her undue hardship to perform the most routine of activities." Id., ¶61.

As the District aptly notes, these allegations establish that "the District began to investigate [Sayers'] non-compliance with the District policy **before** she became substantially limited in one or more major life activities". District's Memorandum of Law [38-7] at 10 (emphasis in original). It argues that its investigation into Sayers' non-compliance cannot have been driven by discriminatory animus when it began before the disability rose to a legally significant level. Id. I agree. See Powell v. Merrick Academy Charter School, 2018 WL 1135551, *8 (E.D.N.Y. 2018) ("[i]t is not plausible that Merrick launched an investigation into Plaintiff's involvement in the student enrollment lottery mishap as smokescreen for firing her

because of her disability when, by her own account, the investigation began before it learned that she had diabetes").

Sayers' conclusory allegation that in 2017 the District "became aware of [her] disabilities due to a medical leave", without additional detail, fails to plausibly establish that she was "regarded as having" a disability prior to the commencement of the investigation into her residency. See Sayers, 2022 WL 682640 at *5 n. 7 ("[t]o adequately plead that she was 'regarded as having' a disability . . . a plaintiff 'must allege that [s]he has been subjected to an action prohibited by the ADA . . . because of an actual or perceived impairment that is not both transitory and minor'").

Sayers' newly added allegations concerning the District's failure to engage in an "interactive process" fare no better. "The ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." Jackan v. New York State Department of Labor, 205 F.3d 562, 566 (2d Cir. 2000). To satisfy that obligation, an "employer must first identify the full range of alternative positions for which the individual satisfies the employer's legitimate, nondiscriminatory prerequisites, and then determine whether the employee's own knowledge, skills, and abilities would enable her to perform the essential functions of those alternative positions, with or without reasonable accommodation." Tillman v. Verizon New York, Inc., 118 F. Supp. 3d 515, 538–39 (E.D.N.Y. 2015).

The alleged accommodation sought by Sayers was for the District to conduct a site visit, rather than use investigators, to confirm her compliance with its residency policy. See Amended Complaint [30], ¶63. Even if this would have eased the burden of the District's investigation upon Sayers, she does not allege that she was unable to perform the essential

functions of her job, nor that this would have allowed her to do so. *See* District's Memorandum of Law [38-7] at 10 ("Plaintiff does not allege the District otherwise failed to accommodate the Plaintiff in actually performing her job"). Therefore, I recommend that this claim be dismissed.

**B.    Due Process Claim**

   **1.    Procedural Due Process**

"When . . . a public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards." Locurto v. Safir, 264 F.3d 154, 171 (2d Cir. 2001). "[T]he pre-termination hearing requirement [is] 'a minimal one.'" Sayers, 2022 WL 682640 at *6 (*quoting* Locurto, 264 F.3d at 173). The employee "'is entitled to . . . an opportunity to present his side of the story'" prior to termination. Id. (*quoting* Munafo v. Metropolitan Transportation Authority, 285 F.3d 201, 212 (2d Cir. 2002)). *See also* Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546 (1985).

In concluding that Sayers had not sufficiently alleged that she was deprived of pre-termination process, Judge Vilardo explained that Sayers "does not allege that the District failed to follow its procedures for dealing with residency policy violations nor that such procedures failed to provide adequate process . . . . [O]ther than by stating the conclusion that she was denied 'a hearing,' Sayers does not allege that she was denied the opportunity to be heard or the 'minimal' hearing owed to her pre-termination". Sayers, 2022 WL 682640 at *7.[2]

---

[2]    Sayers argues that this portion of the court's "previous analysis was flawed". Sayers's Memorandum of Law [40] at 20.  However, "Section 636 of the Federal Magistrates Act, which establishes the jurisdiction and powers of federal magistrates, does not authorize magistrates to reconsider prior rulings of a district judge in referred cases." Nelson v. McGrain, 2017 WL 4155420, *2 (W.D.N.Y. 2017).

Sayers' Amended Complaint still lacks are "any factual allegations from which this Court can infer what type of 'hearing' Sayers believes she was entitled to but denied". Sayers, 2022 WL 682640 at *7. Nowhere does she identify what step in the termination process outlined in Beck-Nichols v. Bianco, 20 N.Y.3d 540, 558 (2013) was deficient. *See* Sayers, 2022 WL 682640 at *7. Nor does she allege "that she had *no* 'opportunity to present [her] side of the story'". Id. (*quoting* Munafo, 285 F.3d at 212) (emphasis added). In fact, she acknowledges that she "complied with the District's investigation and provided evidence to the [D]istrict of her primary domicile". Amended Complaint [30], ¶76.

For the first time, the Amended Complaint alleges "[u]pon information and belief", that "the District did not consider any evidence . . . Sayers provided in their determination of her termination" (id., ¶¶31, 77), and that the District's "private investigator never established [her] primary domicile but rather simply reported her whereabouts during the course of their investigation". Id., ¶32. She further alleges that she offered the District a "Site Check" to confirm her domicile. Id., ¶30.

These allegations, which essentially contend that the decision to terminate her was "arbitrary and capricious" or not "supported by substantial evidence", are challenges that could be raised in a post-termination proceeding commenced pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"). *See* CPLR 7803; Akinde v. New York City Health & Hospital Corp., 2019 WL 4392959, *6 (S.D.N.Y. 2019). "It is not the role of this Court to determine whether the decision to terminate the Plaintiff . . . was correct or supported by sufficient evidence. As long as the . . . Defendants complied with the minimal due process requirements for a pre-termination hearing, the Article 78 proceeding is a 'wholly adequate post-deprivation remedy'". Reed v. Medford Fire Department, Inc., 806 F. Supp. 2d 594, 617

(E.D.N.Y. 2011). *See also* Green v. Department of Education of City of New York, 16 F.4th 1070, 1077 (2d Cir. 2021) ("[e]ven if Green's pre-termination hearing was imperfect, the availability of a state-court proceeding to challenge the arbitration decision provided 'a wholly adequate post-deprivation hearing for due process purposes'"); Locurto, 264 F.3d at 174-75 ("[a]n Article 78 proceeding . . . constitutes a wholly adequate post-deprivation hearing for due process purposes", including for claims of bias, since a person "may raise claims [in that hearing] that the agency adjudicator was biased and prejudged the outcome").

However, Sayers' Amended Complaint, like her original Complaint, fails to "allege that she brought an Article 78 proceeding, nor does she suggest any reason why an Article 78 proceeding was or would have been inadequate". Sayers, 2022 WL 682640 at *8 (*citing* Claudio v. Mattituck-Cutchogue Union Free School District, 955 F. Supp. 2d 118, 129 (E.D.N.Y. 2013)). *See also* Munafo v. Metropolitan Transportation Authority, 285 F.3d 201, 213 (2d Cir. 2002) ("if the state affords a remedy for alleged violations of due process, the plaintiff may not complain about the sufficiency of a due process remedy by singling out one stage in the administrative proceedings and ignoring the rest of the array of procedures available to him").

Instead, she argues that a claim for "accrued salary" need not be commenced by an Article 78 proceeding, and that such a proceeding would not offer her the same level of relief as a §1983 action. *See* Sayers's Memorandum of Law [40] at 21. However, these are the same arguments that she previously raised (*see* Sayers's Memorandum of Law [19] at 18-19), which were presumably considered by Judge Vilardo and rejected. *See* Hellenic American Neighborhood Action Committee v. City of New York, 101 F.3d 877, 881 (2d Cir. 1996) ("[a]n Article 78 proceeding is adequate for due process purposes even though the petitioner may not

be able to recover the same relief that he could in a § 1983 suit"). Therefore, I recommend that this claim be dismissed.

### 2. Substantive Due Process

The Amended Complaint continues to allege a substantive due process violation. See Amended Complaint [30], ¶79 ("[t]his constitutes a substantive Due Process violation"); Complaint [1], ¶58 (same). Although this claim was not expressly addressed by the parties or previously by the court, where another provision of the Constitution "provides an explicit textual source of constitutional protection" against the alleged conduct, that provision, "not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims". Graham v. Connor, 490 U.S. 386, 395 (1989).[3] See Morgan v. County of Warren, 2022 WL 13691731, *2 (2d Cir. 2022) (Summary Order); Laface v. E. Suffolk BOCES, 2019 WL 1959489, *5 (E.D.N.Y. 2019) (dismissing substantive due process claim where it was "entirely duplicative of his procedural due process claim").

Sayers also alleges that her termination violated her First Amendment right to freedom of intimate association, another more specific source of constitutional protection. See Davis, 2015 WL 5772204 at *10 ("Davis alleges that the disciplinary proceeding violated her right to substantive due process since it was brought solely on the basis of retaliation or discrimination - which are allegations of other constitutional violations. As Davis raises these

---

[3] "Interests related to employment are generally not protected under substantive due process because they do not implicate fundamental rights, such as the individual's freedom of choice with respect to certain basic matters of procreation, marriage, and family life." Guttilla v. City of New York, 2016 WL 1255737, *3 (S.D.N.Y. 2016). However, "[t]enured teachers have a constitutionally protected property interest in continued employment", Davis v. New York City Department/Board of Education, 2015 WL 5772204, *10 (E.D.N.Y. 2015), which is infringed "only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority". Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 505 (2d Cir. 2001).

constitutional violations elsewhere in her amended complaint, she fails to allege a substantive due process claim"). Therefore, I recommend that this claim likewise be dismissed.

### C. Freedom of Intimate Association Claim

While Judge Vilardo recognized that "[d]epending on the context, [the intimate association right] may be grounded in the First or the Fourteenth Amendment" (Sayers, 2022 WL 682640 at *8), Sayers expressly bases her freedom of association claim on the First Amendment. *See* Amended Complaint [30], ¶26. Courts have held that "[w]hen the right of intimate association does not implicate any First Amendment speech or retaliation concerns, as is the case here, the court *must* analyze the case exclusively as a Fourteenth Amendment substantive due process claim." Lowery v. Carter, 2010 WL 4449370, *2 (S.D.N.Y. 2010) (emphasis added). *See also* Gorman v. Rensselaer County, 910 F.3d 40, 47 (2d Cir. 2018) ("there is no allegation that Gorman's sister . . . at any time exercised her right to free speech under the First Amendment . . . . Accordingly, we consider the intent requirement within the framework of the Due Process Clause of the Fourteenth Amendment"); Maco v. Baldwin Union Free School District, 2016 WL 4028274, *4 (E.D.N.Y. 2016). Since no First Amendment speech or retaliation concerns are alleged in the Amended Complaint, Sayers has not alleged a First Amendment freedom of intimate association claim.

Sayers has also failed to plead a plausible claim under the Fourteenth Amendment. Judge Vilardo recognized that "[j]ust as the source of a right of intimate association has varied, so has the standard applied in determining whether that right has been violated." Sayers, 2022 WL 682640 at *8. He noted that while some courts have required the challenged action to have "'the likely effect of ending the protected relationship'" or "some

intent to interfere with the intimate association", others have considered "whether the allegedly burdened action 'is arbitrary or an undue intrusion by the state into the marriage relationship'". Id.  However, Judge Vilardo declined to "determine the precise standard applicable to Sayers's claim because regardless of the standard applied, Sayers . . . failed to state a viable claim". Id. at *9.

"Based on the Supreme Court's directive that only deliberate conduct implicates due process", the Second Circuit has held that "a claim under the Due Process Clause for infringement of the right to familial associations requires the allegation that state action was specifically intended to interfere with the family relationship". Gorman v. Rensselaer County, 910 F.3d 40, 48 (2d Cir. 2018).  I see no reason why the same standard should not apply here. The Amended Complaint does not allege that the District adopted or applied the residency policy for the purpose of interfering in her relationship, which is fatal to this claim. While Sayers continues to allege that the District's "officers have objected to [her] right to choose who she has a relationship with" (Amended Complaint [30], ¶86), Judge Vilardo concluded that "[a]t best, it suggests that the District may have been displeased with a relationship that she was in, but it does not allege or raise the inference that the District intentionally interfered with that relationship". Sayers, 2022 WL 682640 at *9.

However, even if no allegation of an intentional interference with the relationship was required to state a claim under due process clause, Sayers' additional allegations fail to meet the alternate standards.  Judge Vilardo concluded that the Complaint did "not include any non-conclusory allegations about how the residency policy affected her relationship - let alone how it would likely end that relationship". Sayers, 2022 WL 682640 at *9.  The Amended Complaint [30] bolsters these allegations by alleging that due to the residency requirement, she was "forced

between maintaining her primary domicile in Niagara Falls, and travel on her own personal time to her now husband's house in Amherst NY", and that the "strain of travel, additional expenses, and her forced time away from her family" affected the relationship. Id., ¶¶88-89.  Ultimately, she alleges that the policy "forced [her] to either split time with her husband and her primary domicile or end the relationship, as her husband was not able to uproot his life in Amherst to move to Niagara Falls." Id., ¶90.[4]

        While these additional allegations establish that the residency requirement placed a strain on Sayers' relationship with her current husband, they fall short of establishing that it had the "likely effect of ending the relationship". See Garten v. Hochman, 2010 WL 2465479, *5 (S.D.N.Y. 2010) ("Garten has not alleged - nor could he - that the decision to move [his children] from one school to another had 'the likely effect of ending' his relationship with his children . . . . While this may have 'severely strained' the relationship between Garten and his children . . . severe strain is a far cry from ending the relationship between parent and child"). Moreover, the District's residency requirement only limited *where* Sayers could reside, not with *whom* she could reside. See Ladd v. Menard, 2016 WL 6810876, *4 (D. Vt.), adopted, 2016 WL 6810755 (D. Vt. 2016) (the right to intimate association was "not directly implicated", where the residency limitation did not prohibit the plaintiff "from living in the same residence as, or associating and interacting with, family or other relatives").  For the same reasons, I also find that Sayers has failed to plead that the District's residency policy was an "undue" intrusion into her romantic relationship.  Nor does she allege that the District's policy was arbitrary.

---

[4]    It is unclear from the Complaint the duration of Sayers's relationship with her "now husband" while she remained a teacher with the District and subject to its residency policy.

D.     NYSHRL Claims

Consistent with Judge Vilardo's earlier decision (Sayers, 2022 WL 682640 at *10), I recommend that the court decline to exercise supplemental jurisdiction over Sayers' remaining state law claims.

## CONCLUSION

For these reasons, I recommend that the District's motion to dismiss the Amended Complaint [38] be granted. Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by January 18, 2023. Any requests for extension of this deadline must be made to Judge Vilardo.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply

- 16 -

with these provisions may result in the district judge's refusal to consider the objections.

Dated: January 4, 2023

                                                           <u>/s/Jeremiah J. McCarthy</u>
                                                           JEREMIAH J. MCCARTHY
                                                           United States Magistrate Judge