UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

ADRIENNE SAYERS,

          Plaintiff,

   v.                                 20-CV-703-LJV-JJM
                                                 DECISION & ORDER

NIAGARA FALLS CITY SCHOOL
DISTRICT,

          Defendant.

———————————————————————

On June 11, 2020, the plaintiff, Adrienne Sayers, commenced this action,

alleging that the defendant, Niagara Falls City School District (the "District"),

discriminated against her because of her sex, age, and disability.  Docket Item 1.

Sayers raises claims under Title VII of the Civil Rights Act of 1964 ("Title VII"); the Age

Discrimination in Employment Act of 1967 ("ADEA"); the Americans with Disabilities Act

of 1990 ("ADA"); and the New York State Human Rights Law ("NYSHRL").  *Id.*  She also

seeks relief under 42 U.S.C. § 1983, alleging that the District denied her due process

and violated her right to freedom of association.  *Id.*

On September 11, 2020, the District moved to dismiss the complaint under

Federal Rule of Civil Procedure 12(b)(6).  Docket Item 11.  On December 14, 2020,

Sayers responded, Docket Item 19, and on January 4, 2021, the District replied, Docket

Item 22.

A week later, this Court referred the case  to United States Magistrate Judge

Jeremiah J. McCarthy for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).

Docket Item 23.  On August 30, 2021, Judge McCarthy issued a Report and

Recommendation ("R&R"), finding that the District's motion should be granted but that Sayers should be given leave to replead.  Docket Item 24.

On September 13, 2021, Sayers objected to the R&R, arguing that Judge McCarthy improperly held her to a heightened pleading standard and that, in any event, she met that heightened standard.  Docket Item 25.  On September 29, 2021, the District responded to the objection, Docket Item 27, and on October 18, 2021, Sayers replied, Docket Item 28.  On March 8, 2022, this Court issued a decision and order accepting Judge McCarthy's recommendation to grant the District's motion but to give Sayers leave to replead.  Docket Item 29.

So on May 6, 2022, Sayers filed an amended complaint.  Docket Item 30.  On October 14, 2022, the District again moved to dismiss.  Docket Item 38.  On November 4, 2022, Sayers responded, Docket Item 40, and on November 11, 2022, the District replied, Docket Item 41.  And on January 4, 2023, Judge McCarthy issued an R&R finding that the District's second motion to dismiss should be granted.  Docket Item 42.

On February 1, 2023, Sayers objected, again arguing that Judge McCarthy applied the wrong pleading standard.  Docket Item 45.  On February 13, 2023, the District responded.  Docket Item 36.  Sayers did not reply.  On May 19, 2023, this Court held oral argument and took the matter under advisement.  Docket Item 48.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

2

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objection and the response; the materials submitted to Judge McCarthy; and the transcript of oral argument.  Based on that *de novo* review, the Court accepts Judge McCarthy's recommendation, grants the District's motion, and dismisses the federal claims in the amended complaint.

## DISCUSSION

The Court assumes the reader's familiarity with the facts alleged in the amended complaint, Docket Item 30, and Judge McCarthy's analysis in the R&R, Docket Item 42.

## I.     PLEADING STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Contrary to that well-established Supreme Court precedent, Sayers contends that Judge McCarthy erred in "recommending [that her] case be dismissed on the grounds of 'plausibility' rather than 'fair notice,' which," according to Sayers, "is the

actual legal standard to test the sufficiency of a complaint."  Docket Item 45 at 2.  Citing

case law that predates the Supreme Court's 2009 decision in *Iqbal*, Sayers says that

the correct standard is "notice pleading" and that "[s]pecific facts are not necessary" to

satisfy that standard.  *Id.* at 4 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511

(2002); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007)).

But in *Iqbal*, the Supreme Court clarified that while "the pleading standard Rule 8

announces does not require 'detailed factual allegations,'" it still "*demands more than an*

*unadorned, the-defendant-unlawfully-harmed-me accusation*."  556 U.S. at 678

(emphasis added) (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not

do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders

'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550

U.S. at 557).  "While legal conclusions can provide the framework of a complaint, *they*

*must be supported by factual allegations*."  *Id.* at 662 (emphasis added).

Indeed, the Second Circuit has explicitly rejected the suggestion that notice

pleading is sufficient following *Iqbal*.  *See Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208

(2d Cir. 2020) (explaining that "in *Iqbal*, [the Supreme Court] held that mere notice

pleading—the pleading standard underlying *Swierkiewicz*'s analysis—was inadequate,

and that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face'" (quoting

*Iqbal*, 556 U.S. at 678)).[1]

---

[1] At oral argument, Sayers's counsel suggested that the Second Circuit's interpretation of Supreme Court case law was flawed. *See* Docket Item 50 at 4 ("That's the 2nd Circuit's standard, that's not actually the Supreme Court standard."); *id.* at 5

For that reason, Judge McCarthy applied the correct pleading standard in the R&R.

## II.   DISCRIMINATION CLAIMS

The next question is whether the amended complaint states a plausible claim of employment discrimination under Title VII, the ADEA, or the ADA.

Because it involves employment discrimination, this case invokes the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2]  Under the *McDonnell Douglas* framework, a plaintiff first must establish a *prima facie* case of unlawful discrimination.  *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015).  To state such a *prima facie* case, the plaintiff must show "(1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and [(4) that she has] some minimal evidence suggesting an inference that the employer acted with discriminatory motivation."  *Id.*  If she meets her burden, the defendant is presumed to have unlawfully discriminated against her, and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.* If the defendant makes that showing, the burden shifts back to the plaintiff to show that the defendant's stated reason is pretextual.  *Id.* at 307-08.

---

("THE COURT:  You disagree with the 2nd Circuit?  [COUNSEL]: . . . [A]s you read that, yes, absolutely, I do.").  Be that as it may, this Court is bound by that interpretation.

[2] Claims brought under Title VII, the ADA, and the ADEA all are evaluated under the *McDonnell Douglas* framework.  *See McDonnell Douglas, 411 U.S. at 802-04 (Title VII); Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167-68 (2d Cir. 2014) (ADEA); *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999*) (ADA).

A plaintiff is "not required to establish a prima face case at the motion to dismiss stage." *Zako v. Encompass Digital Media, Inc.*, 2020 WL 3542323, at *7 (D. Conn. June 30, 2020) (citing *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (summary order)).  Rather, to defeat a motion to dismiss, a plaintiff alleging employment discrimination "need only give plausible support to a minimal inference of discriminatory motivation" behind an adverse employment action.  *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 84 (2d Cir. 2015); *Littlejohn*, 795 F.3d at 306, 311.  But "a discrimination complaint . . . at a minimum [still must] assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed."  *Dooley*, 636 F. App'x at 20 (quoting *EEOC v. Port Auth. of N.Y. & N.J.,* 768 F.3d 247, 254 (2d Cir. 2014)).  For example, a court can infer discrimination from such circumstances as "the employer's criticism of the plaintiff's performance in ethnically degrading terms; . . . its invidious comments about others in the employee's protected group; . . . the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."  *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 502 (2d Cir. 2009)).

In its prior decision and order, this Court found that "Sayers ha[d] not plausibly alleged that her age or gender had anything to do with her termination."  Docket Item 29 at 9.  The Court further found that "Sayers ha[d] failed to plead that she ha[d] a disability within the meaning of the ADA and that she suffered an adverse action because of that disability."  *Id.* at 11.  And Sayers's amended complaint adds nothing to remedy those deficiencies.

With respect to age and gender discrimination, the amended complaint, like the original complaint, alleges only that Sayers is a woman over forty years of age who lost her job.  *See* Docket Item 30 at ¶¶ 34-56.  Indeed, at oral argument, Sayers conceded that she did not have any other facts supporting an inference of discrimination.  *See* Docket Item 50 at 8 ("THE COURT: Other than the fact that she is a middle-aged woman who lost her job, do you have anything in addition to that to suggest that this was age or gender discrimination?  [COUNSEL]: No.").  To suggest that this is enough to plead a plausible claim for discrimination turns *Iqbal* on its head.

What is more, the factual detail that Sayers added to her amended complaint actually undercuts her argument that her termination was discriminatory.  She alleges that five other "similarly situated comparators"—that is, "District employees [who] did not have their primary domicile in Niagara Falls"—"were not subjected to an investigation by the District."  Docket Item 30 at ¶ 44.  But as Judge McCarthy observed, "[r]ather than pointing to [comparators] *outside* of her protected categories (i.e., gender and age), Sayers primarily points to individuals *within* her protected categories."  Docket Item 42 at 4 (emphasis in original).  More specifically, all of the individuals she names are in her protected age category (over 40) and three are women.  *See* Docket Item 30 at ¶ 44.  In other words, Sayers says that five older employees—including three women—did not live in the District but did not lose their jobs, suggesting that age and gender were *not* the reasons that Sayers lost hers.

Moreover, and as Judge McCarthy also observed, "[a]lthough [Sayers] identifies two comparators of the opposite gender, the facts alleged fail to plausibly establish that they are similarly situated."  Docket Item 42 at 4.  "In particular, neither . . . are alleged

to be teachers, and there is no allegation that the District's Superintendent and administrators were subject to the same residency requirement as Sayers." *Id.*  So to the extent that Sayers suggests that male employees were treated differently, her comparison falls short.

With respect to Sayers's ADA claim, the amended complaint alleges that in addition to the post-traumatic stress disorder alleged in her original complaint, Sayers also has anxiety and depression.  Docket Item 30 at ¶ 58.  She says that the District's hiring of private investigators to follow her "aggravated [those] disabilities" and resulted in "a substantial change in her life's activities," including "using a substantial amount of sick time to avoid driving."  *Id.* at ¶¶ 60-61.  She further alleges that the District "did not engage in any interactive process in consideration of [her] known disabilities."  *Id.* at ¶ 63.  According to Sayers, she "provided alternatives to [the District], in so much as allowing them to conduct a Site Check at her primary domicile in Niagara Falls to avoid being followed by a private investigator."  *Id.*

As Judge McCarthy observed, however, "these allegations establish that 'the District began to investigate [Sayers's] non-compliance with the District policy *before* she became substantially limited in one or more major life activities."  Docket Item 42 at 6 (emphasis in original) (quoting Docket Item 38-7 at 10).  Thus, the District's "investigation into [Sayers's] non-compliance cannot have been driven by discriminatory animus when it began before the disability rose to a legally significant level."  *Id.*[3]

---

[3] In fact, Sayers's new allegations charge that the District exacerbated her anxiety and depression, not that it discriminated against her because of it. And that fundamentally misconstrues the elements of an ADA claim.

Nor do Sayers's new allegations regarding the District's failure to engage in an "interactive process" save her ADA claim.  As Judge McCarthy noted, "[t]he alleged accommodation sought by Sayers was for the District to conduct a site visit, rather than use investigators, to confirm her compliance with its residency policy.  Even if this would have eased the burden of the District's investigation upon Sayers, she does not allege that she was unable to perform the essential functions of her job, nor that this would have allowed her to do so."[4]  *Id*. at 7 (internal citation omitted).  This Court agrees with Judge McCarthy that those allegations fail to state a claim under the ADA.

Accordingly, this Court accepts Judge McCarthy's recommendation to dismiss Sayers's discrimination claims.

## III.   DUE PROCESS CLAIM

"An employee who has a property interest in [her] employment 'is entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story,' before [she] is subjected to the loss of employment."  *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 212 (2d Cir. 2002) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)).  Here, Sayers alleges that the District "terminated [her] tenured employment without a hearing." Docket Item 30 at ¶ 75.  She further contends that she "complied with the District's investigation and provided evidence to the District of her primary domicile, located in

---

[4] At oral argument, Sayers's counsel confirmed that her ADA claim was based solely on the investigators following her.  *See* Docket Item 50 at 24 ("THE COURT: That's the only thing that the employer did was have the investigators follow her? [COUNSEL]: Yes.").

Niagara Falls," but "[u]pon information and belief, the District did not consider any evidence . . . Sayers provided in their determination of her termination."  *Id.* at ¶¶ 76-77.

In its prior decision and order, this Court found that Sayers failed to "allege that she had no 'opportunity to present [her] side of the story.'"  Docket Item 29 at 15 (citing *Munafo*, 285 F.3d at 212).  "Although Sayers allege[d] that she did not receive 'a hearing,'" this Court concluded that this "single, vague, conclusory statement [was] insufficient to nudge Sayers's due process claim from 'conceivable to plausible,' and give rise to the inference that she was deprived [of] an opportunity to be heard."[5]  *Id.* (internal citations omitted) (quoting *Iqbal*, 562 U.S. at 680).  Among other things, the original complaint did not allege that the District failed to comply with its residency policy, which requires the District to (1) issue a "seven-day letter" notifying the employee of the alleged non-compliance and (2) provide the employee with the opportunity to respond in writing to the allegations of non-compliance before instituting proceedings to terminate employment.  *Id.* at 14 (citing *Beck-Nichols v. Bianco*, 20 N.Y.3d 540, 558, 987 N.E.2d 233, 241-42 (2013)).[6]

As Judge McCarthy observed, the only allegation that Sayers added to her amended complaint in this regard is "that 'the District did not consider any evidence

---

[5] As this Court noted in its prior decision and order, to the extent Sayers is referring to a pre-termination hearing required by New York Education Law §§ 2509(2), 3020, and 3020-a, the New York Court of Appeals has held that such a hearing is not required to determine non-compliance with the District's residency policy.  Docket Item 29 at 15 n.10 (citing *Beck-Nichols v. Bianco*, 20 N.Y.3d 540, 557-58, 987 N.E.2d 233, 241 (2013)).

[6] As in its first decision and order, this Court takes judicial notice of the District's residency policy, which is discussed by the New York Court of Appeals in *Beck-Nichols*. *See* Docket Item 29 at 2-3 n.2.

[she] provided in their determination of her termination,' and that the District's 'private investigator never established [Sayers's] primary domicile but rather simply reported her whereabouts during the course of their investigation.'"   Docket Item 42 at 9 (internal citation omitted) (citing Docket Item 30 ¶¶ at 31-32, 77).   This Court agrees with Judge McCarthy that "[t]hese allegations, which essentially contend that the decision to terminate [Sayers] was 'arbitrary and capricious' or not 'supported by substantial evidence[,'] are challenges that could be raised in a post-termination proceeding commenced pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR")."   *Id.* (citing CPLR 7803; *Akinde v. New York City Health & Hospital Corp.*, 2019 WL 4392959, *6 (S.D.N.Y. 2019)).   In fact, by referring to the "evidence [she] provided," Sayers pleads that she indeed was given an opportunity to be heard.

"It is not the role of this Court to determine whether the decision to terminate the [p]laintiff . . . was correct or supported by sufficient evidence."   *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 617 (E.D.N.Y. 2011).   "As long as the [defendant] complied with the minimal due process requirements for a pre-termination hearing, [an] Article 78 proceeding is a 'wholly adequate post-deprivation remedy.'"   *Id.* (quoting *Locurto v. Safir,* 264 F.3d 154, 171 (2d Cir. 2001)).

For that reason, this Court agrees with Judge McCarthy that Sayers fails to state a claim for a due process violation.

## IV.    FREEDOM OF ASSOCIATION CLAIM

Judge McCarthy also recommended granting the District's motion to dismiss Sayers's First Amendment freedom of association claim.   Docket Item 42 at 12-14.   This Court agrees with Judge McCarthy's analysis, and Sayers did not object to that analysis

other than to say that Judge McCarthy applied the wrong pleading standard, *see generally* Docket Item 45—an argument this Court already has rejected, *see supra* at 3-5.  Accordingly, this Court accepts Judge McCarthy's recommendation to dismiss Sayers's freedom of association claim.

**V.     STATE LAW CLAIMS**

This Court previously stated that if Sayers did "not amend her complaint to correct the deficiencies outlined [in the Court's prior decision and order]," it would decline to exercise supplemental jurisdiction over Sayers's remaining state law claims. Docket Item 29 at 21.  For that reason, Judge McCarthy recommended that this Court decline to exercise supplemental jurisdiction over the state law claims.  Docket Item 42 at 15.  Neither party objected to that recommendation, and this Court agrees that it is the proper course.

## CONCLUSION

For the reasons stated above, this Court accepts Judge McCarthy's recommendation.  The District's motion to dismiss, Docket Item 38, is GRANTED; the federal claims in Sayers's amended complaint are DISMISSED; and this Court declines to exercise supplemental jurisdiction over her remaining state law claims.  The Clerk of the Court shall close the case.

SO ORDERED.


Dated:        January 31, 2024
              Buffalo, New York


                                        /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE

13